Case number 20-5749, Tony Ramsek, et al. v. Andrew Beshear, et al. Oral argument not to exceed 15 minutes per side. Mr. Payne for the appellants. Good morning, Mr. Payne. You've reserved three minutes for rebuttal. Is that correct? That's correct, Your Honor. Okay, great. Welcome. You may proceed. Thank you. My name is Taylor Payne. I'm here representing Governor Andy Beshear, Secretary Eric Friedlander, and Commissioner Dr. Stephen Stack in this matter. This case is moot. Why don't you just dismiss this case? Well, Your Honor, the case was just rendered... When you're asking us, oh, it's moot, you brought it. Why don't you just dismiss it? Well, Your Honor, we believe that we could get a ruling from this court that the matter is moot, and then therefore wouldn't have to proceed through the same channels at the trial court, and present these arguments there while this is on appeal. Well, not for our decision that it's moot here has any effect on the trial court. I believe this court could order the trial court to dismiss the First Amendment claims and the other claims challenging the mass gatherings order as moot, and also vacate the preliminary injunction that was entered below. Well, are you injured by the injunction? We were injured by the injunction, Your Honor, up until December 14th, 2020, when the order was rescinded. And we believe that alternatively, if the case was not rendered moot... Well, at this time, you either are injured or you aren't. If you're saying you're not injured, then do we have standing anymore to hear your appeal? Do you have standing to pursue an appeal? I believe we do, Your Honor, because at the baseline, we argued that the trial court committed error when it granted the preliminary injunction. Well, does that harm you going forward? Well, I think it could harm future litigation or any potential actions that the governor was going to take absent a mass gatherings order that related to COVID-19, which the governor has expressly said he will not issue again. But the order could have long-term effects down the road on issues that public health officials may take. So in that sense, there isn't... I mean, the district court's decision, in that sense, renders some injury, I suppose, to the Commonwealth, because you're limited in your rights to executive power, I guess, to reduce who can gather and what circumstances. So in that sense, it's a live appeal, I think. Well, I don't think there's a live appeal anymore as to this specific issue as it relates to the mass gatherings order and the plaintiff's rights as they asserted them at the beginning of this action. And that was to specifically gather at the Capitol during the COVID-19 crisis while this mass gatherings order was in effect. And our rescission of that order has rendered the case moot. And... I guess it's just kind of funny because you're basing your standing on... I mean, you agree you have to have standing to appeal, right? We have to judge that at every step of the case. You're basing your standing from the decision below. And you're telling us you're injured by it, but you're telling us the case is moot. And I think your friend on the other side is going to say the case is not moot. So you're both claiming some kind of injury from the district court's order and the future ramification. So I guess I'm just trying to work through those issues. It seems a little bit sort of inconsistent the way it's... You're right, Your Honor. And I understand it. I'll try to be a little clearer in my answer here. When we were addressing standing, and when I was, I was addressing that from the beginning of the case. We had standing to bring the appeal and to seek review of the district court's order. This case being moot, we believe the case should... This court should declare the case moot and send it back to the district court. If this court believes that the district court should address mootness in the first instance, we would be fine with that order, Your Honor. We understand it's procedurally awkward in the sense now that we brought the appeal and then that the order's been rescinded. And so now we're here before this court. But we do believe we could get a ruling from this court that the matter is moot and send it back to the lower court to either consider... I think it's my point. You can dismiss this appeal and you're back to the district court. That's right, Your Honor. I think we could have done that earlier, Your Honor. But having this done on December 14th and the matter already set... I'm trying to figure out what you think the magic is by us it's moot as opposed to you're just saying we're going to withdraw our appeal. Well, because I think that this court has the power under equity and under 28 U.S.C. 2601 to order the... to vacate the preliminary injunction below as well. Well, see, now you want us to do something else other than hold it moot. You want us to take action. I guess you can't have it both ways. I think there are cases that do have it both ways, Your Honor. This court has the power to declare the action moot but still retain the jurisdiction to vacate the preliminary injunction. This is an odd case in that most of those cases, Your Honor, are instances where the prevailing party below has taken action that moots the case on appeal. In this case, it's the happenstance of COVID-19. We had an order that has been amended and changed throughout the entire summer after those opening months of COVID-19 and then was ultimately rescinded in its entirety in December. The governor stated he would not reenter that order or any other order that would limit... in any way limit gatherings on the Capitol grounds. And so we're in a position where the preliminary injunction is in effect. No party would be prejudiced by vacating that order. And the appeal and the claims below have been rendered moot by that action and by the happenstance of COVID-19, creating a situation where the governor can implement more targeted, limited measures and is withdrawing those measures as we vaccinate the public and hopefully move out of this pandemic in the next few months. So as I understand it, you want us to hold this matter moot but tell the district court this injunction fails? Yes, Your Honor. Under matters of equity, this court can do that. And in this instance, Your Honor, I mean, there are multiple reasons to vacate that order. The order is entered is erroneous. The order is entered will have long-standing effects in the Eastern District of Kentucky addressing free exercise challenges. And vacating that order will have no prejudice to any of the parties involved. It's only a preliminary injunction. If you dismiss your appeal, the case would go back down to the district court. The district court could refuse to enter a permanent injunction on these same grounds. But the difference between this case and the cases you cited before is that you're the appellant. Oftentimes, you're the appellee and then you revoke the action and you don't control the ability to dismiss the appeal, but here you do. That's true, Your Honor. But we've moved in front of the public court back before this action initially came up here to vacate that preliminary injunction and it hadn't done so. And we would certainly do that if it was sent back. But this court has the ability to vacate that order. And I do recognize that it is the unique circumstance of, in this case, the non-prevailing party below asking the court for that relief. But in this situation, in COVID, we think it's appropriate here because otherwise, to seek review of these orders, the governor could, I mean, in some ways be required to leave orders that had no longer had any practical effect or orders that were affecting citizens' rights. Under your theory, could we hold your appeal moot but that the temporary injunction stands and the district judge will determine whether it's going to be permanent or not? I think this court... The opposite from what you're requesting? I don't think this court would have the authority to rule in the opposite, but I think the court could not rule on the preliminary injunction if it decided the case was moot. I believe under the flexibility of the statute that this court would have the ability to vacate it under principles of equity in the sense that it just no longer has any effect and there shouldn't be any extending legal consequences from that preliminary injunction for future litigants or for the parties in this case. Mr. Payne, you really are not directly saying this, but what I understand you to say is what you're really interested in is us vacating that preliminary injunction. But the odd way from my perspective that you're asking us to do this is you admit the case is moot, but then you say you want us to vacate it because the order's wrong. If our basis of vacating the merits, and to me that just doesn't make any sense. Well, Your Honor, I would say that principally we want this court to declare that the case is moot. This court, we do believe, has the power to vacate that preliminary injunction and could, and we think equity favors vacating that injunction. The only reason I would address what we've previously briefed and the erroneous aspects of that order is to address that prong of equity that this requires this court to look at the legal consequences of that order down the road. You keep saying equity requires this. Are you referring to the Munsonware Doctrine? No, if the court were to address the equity factors of considering to vacate, we think this court would then need to look at one of the equity factors is the legal consequences of this case for these parties of different politics. Well, maybe you can turn to the merits. We can maybe give you a little extra time, but your friends on the other side would say that this order, when it was in existence, was applied differently to different groups and would point to the governor appearing at one rally and seeming to approve one group rallying versus another group sending them to the parking garage and suggesting that there might be future prosecution. We've disputed that in our briefs, Your Honor, and we believe that that was... It's hard to dispute. You agree the governor showed up at the Black Lives Matter rally and addressed the crowd and didn't tell the crowd to go home because they were in violation of the governor's ordinance, correct? That's correct, Your Honor, but the governor also did not in any way enforce the order against the protests that these plaintiffs engaged in, participated in, or organized. The only steps the governor took, and we admit the plain language of the order, prohibited any gathering at the Capitol, but the governor, through his express statements to the plaintiffs, informed them that there would be no enforcement of the mass gatherings for protests at the Capitol. Did he say at a press conference that he was unsure whether he would enforce it against them and hadn't made up his mind yet? Something along those lines? I believe he said at a press conference that what they were doing was violated the order. And then someone asked if there would be consequences of that, and I believe he said, we'll see. But the governor to these plaintiffs in this action below expressly told them that there would be no enforcement of that. And the other problem with that, Your Honor, is that the plaintiffs throughout this entire process failed to comply with existing state law that requires them to submit an application to hold events on Capitol grounds. They didn't do that until that requirement was raised in a hearing at the district court. Did the other group go through those steps of getting a permit? I believe they did, Your Honor. So part of that... Is in the record? I mean, a lot of these things are pretty spontaneous. The Black Lives Matter group, the Breonna Taylor group, I don't believe that is in the record, that they submitted an application. But it's my understanding that they did. The plaintiffs, I don't know if the plaintiffs' application that they ultimately did submit for the May 23 rally, after it was brought to their attention, that they hadn't done that yet. I don't believe that that is in the record. I do know they submitted it, and then there were negotiations regarding that application. And that led to the creation of the alternate speech zone of trying to accommodate that. Can I ask you one other question? I don't mean to take all the time. But one of the criticisms, I think, that the district court identified and your friends on the other side identified is the tailoring of who's allowed to gather and who's not. And I have total sympathy for those in executive leadership who have to make really tough decisions. But one might question barring people to get together to express their political views about one issue or another, but then allowing lawyers or accountants to get together to discuss deals, or Wildcats fans to get together to go to a football game. How do you defend the tailoring? I mean, assuming we think this has to be narrowly tailored in some sense, how do you defend the lines that the governor drew with respect to application of the order? Well, to defend the lines, Your Honor, I think the first thing we would say is that this order regulated all mass gatherings. What it exempted were normal operations of certain businesses and essential service providers where the gathering occurs either incidentally or as a need for to provide the service. So I think in a global health pandemic, I mean, one wouldn't say we couldn't allow gathering in a field hospital or other medical provider. Those aren't the ones I use as examples. I use lawyers and accountants and football fans. Well, that's true, Your Honor, but football fans were not allowed to gather when this order was entered and challenged. Over the course of the summer, the governor began loosening those restrictions to allow event spaces and larger places like that to open at limited capacity. But at that point, political protest then was allowed at the Capitol. So that wasn't a direct comparator. But to your point about offices and essential services, I think the governor took advice from federal counterparts of certain groups that needed to remain open in a public health crisis. Part of the decisions for office based things were that there were other requirements in place requiring offices to telework as much as possible while still being able to provide essential services. And so there were measures in place that we were just in the same way the mass gatherings order was put in that we were hoping were being followed. But we did recognize that shutting down potentially lawyers offices or accounting offices could be detrimental to the public health in the sense that people needed to access those services to or future medical care or instances like that. So it's a very difficult line we're having to draw. And obviously, the governor at the opening days of this pandemic is doing it with limited knowledge in an ever evolving circumstance with a disease we're learning about each day, and how better to control that. Yeah, it's as I completely agree on the challenges everyone faces. Do either my colleagues have a question? I'm sorry, I took a lot of the time. No. Okay, well, thank you, Mr. Payne, you'll get your rebuttal time. Thank you. Mr. Wiest. Good morning, your honors. My name is Chris Wiest. I represent the appellees and to start unless the court wanted to address the merits with the mootness issue, because I think that it is important to address and and I wanted to specifically talk about who has the burden on these issues. And the governor has the burden on these issues to both prove mootness, it has been described as a heavy burden. And in terms of the exceptions, and there's a there's a case I wanted to talk about with the capable repetition, it was decided last year by the Sixth Circuit. I apologize for not citing it. It was Aaron versus O'Connor 914 f 3rd 1010. And the question is, are these orders short in duration? unquestionably, they are, in terms of capable of repetition, and the same complaining party being subject to the same action, the Aaron court, recognize that it's not whether it's more likely than not that the order is going to be back on, but whether or not it is possible that the order, you know, will be put, put back on as whether it's capable of repetition. And here, the governor can certainly put these orders back on with the stroke of the pen. Yesterday at the governor's press brief at the 32 minute mark, your honors, a reporter asked the governor with cases on the rise, whether he would reimpose restrictions on the public. And his response was, well, they're looking at case trends, and if cases continue to rise, and they don't plateau off, then they would look at doing so. That's an admission by the governor publicly in the same way that council couldn't he, if there were changes of circumstances in a similar order, he could your honor enter a similar order with repetition, that's that's because there's new circumstance. We are honored it is repetition in the sense that these plaintiffs will again be if something changes, and there are more people getting sick, or the virus mutates, or whatever, he could enter a similar order, could he not? Because of those changes, he could your honor, in light of those changes, but that doesn't, in fact, your honor, I would submit that that demonstrates that this case is not new, because the circumstances are possibly changing. And these plaintiffs could be subject to the same action again, in terms of a restriction on their ability to gather and engage in political speech. And when we look at the governor's healthy at work website, we see in bold a reminder that people should be, quote, prepared for state and local public health orders to be extended, amended, or changed as needed to protect public health. This means we may move between different phases during this pandemic. And, and, you know, these are government statements, your honor, that demonstrate the possibility of this being put back on. And when we go back to the burden, and again, under under the supreme US Supreme Court's decision, and Friends of Earth, it's the governor's burden to make sure that it's, quote, absolutely clear, the restriction will not be reimposed. And that's true for voluntary cessation. And that's true for capable of repetition. Both of those. We see, I mean, the problem that I have with that argument that I think Judge SirHendricks was, was, was getting at is that if all the facts were exactly the same, when this order was reimposed, if that was to happen, then I can understand why you would want a direction from the courts that you can't reimpose that order. But it just seems to me in this, the problem with this whole pandemic is the fluid nature of how things are going. And that seemed to be what the Supreme Court was concerned with, too. So if we're talking, when we're trying to figure out whether this is capable of repetition, am I right that the facts upon which the order is based and the terms of the order and the comparisons in the order all would have to be the same? Certainly in a, in the free speech cases, your honor, the comparators become critically important. I do not, I do not believe that they're necessarily as important in this case, because we're not only dealing with the notion of, you know, the content neutrality is only one of the three tests under Ward versus Rock versus racism that we're looking at. And the other two, of course, are a narrow tailoring and ample alternatives, which are going to be. But how, how do, how does whatever we do today, if assuming this case for a moment is not moved, how do, how do we address what restrictions are appropriate or inappropriate under the First Amendment when you don't know what the order was going to be? You don't know what the comparators are going to be. It just seems to me that, that this is all speculation. Your honor, I do not believe that there needs to be the exact same comparators. I think, you know, is there, are there general comparators and if we're restricting, you know, and putting a blanket ban on gatherings at the Capitol, that's going to raise issues. I would also point out that, and this was the issue in the Fourth Circuit case that we cited. Let's stop, stop right there for just a second. Let's, let's just hypothetically assume that there is a complete ban that's imposed for whatever reason. But let's also assume in the hypothetical, that that complete ban extends to all arguable comparators. And it's supported based upon public health considerations. At that point, do you have, do you still have your First Amendment claim? I think you do, your honor, under Ward because of the ample alternatives. You do in this case, and that makes it a little bit different than the church cases, the freedom of exercise case. I would point this out, your honors, and this was. I'm, I know I'm sort of pursuing this with you, but you then turn to whether there's, there are adequate alternatives. So you'd have to know, would you not, in advance, what the adequate alternatives would be. I mean, I understand how you reject out of hand, a drive through third floor of a garage a block or two away in terms of trying to influence representatives and the governor. I get that, but you don't know what the, what the other, if the governor was smart, he would come up with a new, different, more appropriate alternative means of expression, wouldn't he? And yet your honor, for almost nine and a half months, he did not do that in this case. And I think that that is also an indicator of where we've been. And I think, you know, what we, what we saw instead were efforts to lift the injunction in the district court, you know, an effort to obtain a stay. And I think to some degree, I do think past this prologue, um, your honor, there's another point that I think is critical here. And that is that my clients repeatedly have been at the Capitol, particularly since injunctive relief has been entered and, and they have acted in contravention of this mass gathering order with the protection of the district court's injunction. And one of the things that was interesting in one of the cases that we cited, and it was a fourth circuit case, it was the tenant case where what the district court did in that case was it didn't vacate the injunction. Instead, it, it, it sort of dissolved it going forward because it, and that kept people who violated the repealed statute was campaign finance case. In that case, the repealed statute from being prosecuted. And so, and, and that does, you know, get to why a marriage decision is necessary here. Um, I, we believe, of course, the governor would be free to dismiss his appeal. Um, but these plaintiffs in the absence of injunctive relief are technically subject to prosecution. And by the way, it's not the governor's decision as to whether or not these plaintiffs will be prosecuted. Those are made by the County attorneys, probably the County attorney in, um, Franklin County. And there's never been any indication that in the absence of an injunction, that County attorney would not prosecute these violations, which are class A misdemeanors to violate the governor's orders subject to a year, up to a year in jail. They've got a two-year statute of limitations. And so that is yet another reason why we do not believe that this case is moot because these plaintiffs in the absence of injunctive relief are subject to criminal prosecution for these activities. Counsel, counsel, if we held this to be moot, it went back to the district court. Your injunction is still in effect. Wouldn't you like us to do that? Um, Your Honor, we would be comfortable with that. And we absolutely dispute the vacator is, is appropriate in this case, uh, under the Supreme Court's decisions in Bonner Mall and Arizona, Arizonans for official English. There is no question, but that the governor's actions in this case, I mean, this was not even an expiration of an order. This was the governor rescinding an order. His actions, um, are what made this case moot. And under those two us Supreme Court cases, they suggest that where a party, particularly an appellant takes action to moot out a case vacator is not appropriate. So, uh, Your Honor, to your point, um, we do, um, in the event, the case is moot. We absolutely believe that the preliminary injunction should remain in force in effect. And if the court were to do that, I mean, we would, you know, we could go and fight this fight about a permanent injunction, you know, another day. And in fact, would would suggest doing so, or at least ensuring that there was an injunctive relief to prevent prosecution going forward. District court. Your Honor's on the on the merits. Uh, again, I think our point is that we think the district court got it wrong on content neutrality. And I did want to address that, um, under the governor's as a threshold point. Um, there's two ways we could resolve this. One would be, uh, is a facial challenge. One would be an as applied context. Do you agree with that? And are you pushing us in one direction or the other? I do agree with that, Your Honor. I we believe that the order is actually facially invalid in part because of the exceptions. And we took Dr Stack's deposition in this case. Who's the public health commissioner? He admitted that what the mass gathering order, you know, restricted other orders lifted. And one of the one of the comparators, and this was the one that I really want to, um, harp on because I think it makes a lack of content neutrality clear on the face is outdoor auctions that the governor allowed. And the governor, you know, people could gather and scream back and forth, just like in an auction. And Dr Stack admitted this. And this kind of a worst case scenario in terms of what was allowed and what's not. And so if you're shouting commercial speech and you're making bids and that's the face of your message that's permissible. But if you're shouting and the lockdowns, that's not. And on its face, Your Honor, that suggests a lack of content neutrality. The district court held that disorder was content neutral, and we believe the district court aired in that regard. I mean, the comparator made very, very clear before we even get to the viewpoint discrimination that we believe occurred in the enforcement where the governor literally was photographed welcoming the BLM rallies with open arms while telling our clients they needed to go to the top of the parking garage, or we'll see whether or not there's gonna be additional enforcement, uh, different message, different, um, response. And we cited a number of cases in our brief that suggests that that does, in fact, create viewpoint discrimination. Can I ask you to address either the threats of prosecution or the other chilling impacts this order had on your clients if it did? And to set that up, you know, we just had a case called Pleasantview where we decided not to reach the merits of an order because it was going to expire or had not really been applied at all. So in that circumstance, there was a group that wanted to get a political, do a political indoor gathering, said they might do it, but they didn't cite any actual gathering that they had tried to have that had been curtailed or gathering that they had had that they were worried was going to be prosecuted in the future. So your case to me seems a little different in that your group, your, your clients have actually gathered, maybe on multiple occasions, I'm, I'm, I guess, um, but have, is there anything in the record that shows, um, how their efforts were curtailed? Either people said they didn't go to rallies because this order was in place, or they wouldn't, they would have gone to the rally, but they wouldn't go in the parking garage because that's where they were forced to go. Um, I know there, I know we talked also about some threats of prosecution, but are there any tangible things in the record that show how your clients were harmed by the governor's conduct? There is your honor. And certainly this is not this, this court's first look at this case, this, this, um, this case came up in an injunction, pending appeal context, um, right around the time that it was brought and the evidence of record, um, which, which was not rebutted was that there were police vehicles that blocked ingresses and egresses for these protesters. The evidence of record was that there were barricades that were set up with criminal prosecution notices that blocked portions of the Capitol for these protesters. The evidence was that, um, the governor, uh, following these protests made about we'll see in terms of prosecution, all of those, by the way, your honor, our forms of enforcement, which this court held in the injunction pending appeal, which doesn't require that the plaintiffs in this case be dragged off in handcuffs, so to speak, but are the actions that, that chill speech. And this court found that these plaintiffs had standing in the injunction pending appeal because of that record evidence, which was unrebutted. Um, and so, you know, I would suggest that it does not require that these plaintiffs be criminally prosecuted, but there were certainly indications that were public condemnations by the governor about their gathering on, on television meant to curtail and shoulder speech also, um, at, at multiple press conferences that continued throughout this litigation. So all of those, your honors are forms of enforcement in, in, in no context that we've ever seen. Um, certainly does anyone actually have to be prosecuted? In fact, that would obviate the need for a is simply not required, particularly in first amendment contexts where simply chilling speech is effective to establish standing. And all that is in the record, your honor, we did cite at the page ID number where that was in our briefing as well, uh, where these notices were. Um, I would note that at least for one of these plaintiffs, he was actually one of the church attendees that, uh, in response to one of these same mass gathering orders received the quarantine of prosecution notice that was at issue in the Roberts and Maryville cases, where they actually said you're in violation of the mass gathering order. You're subject to a class, a misdemeanor and criminal prosecution. It was a notice that was put on his windshield after he attended Easter Easter church. So as to that plaintiff, there's even additional enforcement indications in terms of what and how they were enforcing this mass gathering. Does anyone else have any questions on the panel? If not, thank you very much. Mr. Payne, you have three minutes. Thank you, your honor. In pleasant view, which was decided less than a month ago, this court held that when a law is off the books and replaced by a new order that no longer injures the plaintiffs, the case is moot. In pleasant view, it was the exact same order at issue that ultimately did rescind this mass order. That's executive order 2020-1034. And this court recognized that the governor said when he issued that order, he will not issue a new order to keep people from getting together. Yeah. So that was a, that was a very thoughtful panel that issued that decision. So I don't quarrel with their reasoning. Um, but I do see a little difference. And I was asking your friend about this on the other side, uh, between that, you know, there was a group that gathered politically in their home and they said they might do it and they're worried about enforcement of the order. But here we have some water under the bridge. I mean, this group has tried to gather, they have gathered a couple of times. They say they've been chilled in some respects. And so I see some distinctions between, for the factual backdrop of that case versus this. I agree, your honor, there are distinctions, but the distinctions favor in a much clearer finding here that the actions will not repeat themselves or that the plaintiffs were not harmed. In this case, we literally have evidence in the record that plaintiffs gathered every single time they intended to gather despite the mass gatherings order. In effect, we have evidence that the governor during the beginning of this litigation expressly told the plaintiffs they will not be prevented from gathering at the Capitol and they will not be prosecuted for gathering at the Capitol pursuant to the mass gatherings order. And what the plaintiffs here have done is they've confused two distinct issues and that's the mass gatherings order, which is a COVID-19 related measure to prevent large groups of people from gathering together and spreading this disease with existing state law that requires anyone that's going to hold an event at the Capitol to apply with the finance and administration cabinet to inform the cabinet how people they expect to attend, whether there will be vendors or anything of that nature, and where they're seeking to hold the event on Capitol grounds. Plaintiffs never did that in this situation. So the barriers and the blocking of egress and ingress to the Capitol at different times, we dispute when that occurred, your honor, but in the record here, plaintiffs took a picture of the barrier, which has a sign posted on it saying that the Kentucky state police had erected this barrier pursuant to the state, the existing state law and that barrier, your honor, from the record, it's clear a group of individuals gathered right outside of the governor's window, office window, while he was conducting a press conference to scream and chant and disrupt that press conference. No one's doubting that they weren't expressing their first amendment rights in doing that, but government through this state law has the ability to pardon off, partition off certain areas of the Capitol so that public business may still occur. And that's all that occurred here. They engaged in areas to allow drive-in services. The parking lot is the only place that can happen. If plaintiffs would have petitioned and sought an application to drive around the loop of the Capitol, that would have been permitted. If anything was prevented, it was because no one knew they were coming and we were blocking it off for purposes of allowing the governor to conduct his press conference without it being interrupted by chance, so that he could actually convey important messages to the citizens about COVID-19. Sure. All right. Well, thank you very much. Terrific argument. Do any of my colleagues have any other questions? Great. Well, the case will be submitted. Both of you did an excellent job, very hard case, and we will issue our decision in due course. Thank you.